UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENNETH FRIEDMAN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JAMES DZURENDA, et al.,<br><br>　　　　　　　　　Defendants. | 3:18-cv-00384-MMD-CLB<br><br>**<u>REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE</u>**[1] |

This case involves a civil rights action filed by Plaintiff Kenneth Friedman ("Friedman") against Defendants James Dzurenda ("Dzurenda"), Isidro Baca ("Baca"), Yisroel Rosskamm ("Rosskamm"), Lisa Walsh ("Walsh"), Rich Snyder ("Snyder") (collectively referred to as "Defendants").[2] (ECF No. 1). Currently pending before the court is Defendants' motion for summary judgment. (ECF No. 27). Friedman responded (ECF No. 32)[3] and Defendants replied (ECF No. 35). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 27) be granted, in part, and denied, in part.

## I.　FACTUAL AND PROCEDURAL HISTORY

Friedman is currently in the custody of the Nevada Department of Corrections

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Friedman also named Brian Ward ("Ward") as a defendant in his complaint, however, on September 4, 2020, the court entered a notice of intent to dismiss Ward pursuant to Fed. R. Civ. P. 4(m). (*See* ECF No. 34). The court set October 2, 2020 as the Rule 4(m) dismissal deadline. To date, no proper proof of service has been filed as to Ward. Accordingly, the court recommends that Ward be dismissed as a defendant from this action for failure to effectuate serve pursuant to Rule 4(m).

[3] Friedman was permitted to supplement his response (*See* ECF No. 37), and filed a supplement on September 25, 2020. (ECF No. 38).

1

("NDOC") and housed at the Clark County Detention Center ("CCDC") for the pendency of his habeas review. (ECF No. 38). Proceeding *pro se*, Friedman filed the instant civil rights action pursuant to 42 U.S.C § 1983 alleging three counts against Defendants for events that took place while Friedman was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 1). Friedman seeks monetary, injunctive, and declaratory relief. (*Id.* at 10).

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Friedman to proceed on the following: (1) a violation of the First Amendment's guarantee of free exercise of religion against Defendants, and (2) a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants. (ECF No. 5 at 4-6). The Court dismissed Friedman's Equal Protection Clause claim. (*Id.* at 5, 7).

**A.     The Complaint**

In his complaint, Friedman alleges the following: Friedman is a practitioner of Orthodox Judaism. (ECF No. 1 at 4). Over the past two years, Defendants have provided a Common Fare Menu ("CFM") that insufficiently serves the Jewish Faith. (*Id.* at 5). The CFM primarily consists of vegetarian foods with cold raw fruits and vegetables, and is served with almost daily portions of beans and rice. (*Id.*) This diet is not consistent with the Biblical mandate requiring meals consisting of meats and fish. (*Id.*)

Frequently, the NDOC failed to keep and provide Kosher facilities or food by Orthodox Jewish standards, due to vermin infestations and spoiled foods. (*Id.*) The diet provided by the NDOC is not a Kosher diet under the Code of Jewish Law or Orthodox Jewish standards because the meals are not prepared in accordance with Jewish law. (*Id.*) Consuming these infested or rotten foods causes Friedman spiritual desecration and digestive issues. (*Id.*)

///

The CFM provided by the NDOC is not comparable to the CFM provided by other prison systems, including the Federal Bureau of Prisons ("BOP"). (*Id.*) The NDOC CFM, unlike the BOP equivalent, does not conform to Shulkhan Arukh[4] and makes an Orthodox Jewish prisoner choose between violating their faith or not eating enough food to live. (*Id.* at 7).

### B. Motion for Summary Judgment

On August 5, 2020, Defendants filed a motion for summary judgment. (ECF No. 27). Defendants argue Friedman does not have a sincerely held religious belief in the Orthodox Jewish faith because his canteen purchases show he frequently purchased bacon, sausage, and shrimp[5]; and therefore, the defendants are entitled to summary judgment. (ECF No. 27 at 6). Defendants further argue summary judgment is proper on the grounds that Friedman has failed to show personal participation for any of the named defendants. (*Id.* at 7). Additionally, Defendants argue Friedman failed to demonstrate a substantial burden on his religious exercise and legitimate penological interests justify the CFM diet. (*Id.* at 9). Lastly, Defendants argue qualified immunity is a proper basis for summary judgment because the CFM was organized under rabbinical supervision and Friedman cannot establish a constitutional violation. (*Id.* at 10).

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a

---

[4] The Shulkhan Arukh consists of four volumes of Jewish religious scripture including the Jewish dietary laws.

[5] The inmate purchase history submitted by the Defendants (ECF Nos. 27-8, 27-9, 27-10) shows Friedman purchased egg and sausage sandwiches, hot summer sausage, and precooked sliced bacon frequently in 2016. (ECF No. 27-8). In 2017, Friedman made sporadic purchases of the same items (ECF No. 27-9), and did not purchase any non-Kosher items in 2018. (ECF No. 27-10). In 2019, Friedman mainly purchased Kosher items with the limited exception of top ramen-lime chili shrimp. (ECF No. 27-10 at 14).

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material." *Id.* A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex,* 477 U.S. at 323*; Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute

4

requiring a factfinder's resolution.  *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

**A.   Personal Participation**

A prerequisite to recovery under 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States.  *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985).  Liability under § 1983 arises only upon a showing of personal participation by the defendant.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Defendants assert Friedman has failed to demonstrate personal participation in the alleged constitutional violations as to any of the named defendants. (ECF No. 27 at 7-8).  In opposition, as to Defendants Warden Baca and Associate Warden Walsh Friedman asserts he spoke with both Baca and Walsh about the CFM's non-compliance with Jewish dietary law and nothing was done.  (ECF No. 38 at 7).  Friedman further states on two separate occasions Associate Warden Walsh showed hostility to his concerns and took no action to address the vermin infestation or the deficient nature of

the diet. (*Id.*) While there is no respondeat superior liability under § 1983, personal participation is found when a supervisor knows of the constitutional violation and does nothing to prevent it. *Taylor*, 880 F.2d at 1045. Friedman's own testimony that he spoke to both Warden Baca and Associate Warden Walsh about the violation of his religious liberties, and nothing was done to prevent it, is sufficient to create, at a minimum, a genuine issue of material fact as to the participation of both Defendants Baca and Walsh.

With respect to Defendant Director Dzurenda, Friedman claims he sent letters to Director Dzurenda expressing his concerns about the CFM diet, in addition to the grievances he filed. (*Id.*) In his sworn declaration, Friedman states these letters are not attached to his opposition (ECF No. 32) because they are in his litigation file which the NDOC did not transfer with him to CCDC.[6] (ECF No. 38 at 14). However, due to Friedman's status as an inmate proceeding *pro se*, the court construes his statements provided in motions and pleadings as evidence sufficient to overcome summary judgment to the extent that the statements are based on personal knowledge, set forth facts that would be admissible into evidence, and were made under penalty of perjury. *Jones*, 393 F.3d at 923. Here, Friedman states under penalty of perjury that he sent letters to Dzurenda expressing that the CFM does not comply with Orthodox Judaism dietary law, other Orthodox Rabbis communicated with Dzurenda about the deficient diet, Dzurenda knew of the grievance, and Dzurenda was in a position to implement the policy of the NDOC but did not act on the information. (ECF Nos. 1 at 2; 38 at 7-8). Thus, viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could conclude that: (1) letters were sent to Dzurenda; and (2) that Dzurenda's failure to act after receiving letters about constitutional violations is sufficient

---

[6] In his sworn declaration Friedman states the NDOC has not transferred his litigation file and he does not have access to the evidence he acquired to oppose this motion for summary judgment. (ECF No. 38 at 14). While the NDOC's failure to provide Friedman with his litigation file is concerning to the court, the sworn declaration has provided enough evidence to refute the Defendants' arguments on summary judgment.

to establish personal participation. As a result, Friedman has shown the presence of sufficient facts to at least create a triable issue of material fact as to Defendant Dzurenda's personal participation.

As for Defendant Rabbi Rosskamm, Friedman states he spoke with Rabbi Rosskamm about the deficient diet and personally witnessed Rabbi Rosskamm ignore the presence of vermin and other contaminations in the CFM food. (ECF No. 38 at 8). Friedman further states that despite observing vermin infestations, Rabbi Rosskamm certified the meal as kosher. (*Id.*) Thus, Friedman has sufficiently shown the personal participation of Rabbi Rosskamm in the alleged constitutional violation.

Lastly, Friedman alleges Defendant Chaplain Snyder personally participated in the constitutional violation. Friedman claims he also spoke with Chaplain Stogner about the issues with the CFM and Chaplain Stogner relayed that message to Chaplain Snyder. (ECF No. 38 at 7). Friedman has failed to address any proof of the conversation between Stogner and Snyder or any additional information suggesting Snyder was responsible for monitoring the CFM diet. Without more, the alleged facts do not show any participation by Snyder. Therefore, summary judgment is appropriate for Chaplain Snyder.

**B.    First Amendment**

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In order to implicate the Free Exercise Clause, the inmate's belief must be both sincerely held and rooted in religious belief. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "A person asserting a free exercise claim must show that the

government action in question substantially burdens the person's practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987).

### 1. Sincere Belief

First, Defendants argue summary judgment is proper on this claim because Friedman does not sincerely hold Orthodox Jewish beliefs based on his frequent purchases of non-kosher items from the canteen. (ECF No. 27 at 6). The truth of a belief is not open to question, however, "there remains the significant question of whether it is truly held." *United States v. Seegar*, 380 U.S. 163, 185 (1965). Ultimately, "[a] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backslider, penitent, and prodigal sons?" *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 791-792 (5th Cir. 2012) (*citing Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012)). In response to the Defendants assertions, Friedman does not deny that he purchased non-kosher food items but instead asserts that he purchased these items "to give to the needy" and to "trade to obtain kosher" food or other items in the general prison economy. (ECF 32 at 3). Friedman further states that there is no evidence he acquires non-kosher foods for his own consumption. (*Id.*) Given Friedman's claims, the court finds an issue of fact exists as to the sincerity of his religious beliefs which can only be resolved by a fact finder.

Defendants also argue that Friedman's decision to voluntarily withdraw from the CFM program shows he does not hold a sincere religious belief. (ECF 27 at 6). A holding that gives effect to such an argument will place a sincere religious practitioner in the untenable position of having to choose between violating their religious tenements or receiving meaningful access to the courts. As a result, this court cannot hold that

Friedman's decision to withdraw from the very diet he asserts does not comply with his religion somehow evidences the insincerity of his belief. Therefore, Friedman's assertions, made under penalty of perjury, are enough to create a genuine issue of material fact as to whether Friedman maintains a sincere religious belief that he must adhere to a religious kosher diet.

### 2. Substantial Burden

"A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013). Defendants argues the certification of the CFM as kosher by Rabi Rosskamm is sufficient to show there is not a substantial burden on Friedman's religious exercise. (ECF No. 27 at 6). However, there is no sworn declaration of Rabbi Rosskamm[7] stating the basis for his approval of the CFM menu, nor is there an indication that Rabbi Rosskamm's view correctly implements the Jewish dietary law. Friedman argues the NDOC's failure to keep the CFM food free from infestation and the lack of meats and fish completely deprive him of his right to a religious diet sufficient to sustain him in good health. (ECF No. 1 at 5-7). Friedman supports his claim by stating he personally observed severe contamination of the CFM preparation area and by citing to the code of Jewish dietary law in support of his claim that the a "vegetarian kosher" diet is not a "religious kosher" diet. (ECF No. 32 at 11-13). Therefore, the evidence before the court shows that a genuine issue of material fact exists as to whether the CFM diet, *as implemented* by NDOC, places a substantial burden on Friedman's religious exercise.

///

---

[7] Defendants cite to "Declaration of Rosskamm" in their motion for summary judgment, yet there is no exhibit showing such a declaration attached to the motion (ECF No. 27) or the reply (ECF No. 35).

### 3. Legitimate Penological Interests

For the CFM diet to justifiably impinge on the First Amendment, the government must show that the regulation "is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91.

Defendants assert that the first *Turner* factor weighs in their favor because the CFM diet was created for the legitimate penological purpose of cutting costs and making religious meals widely available. (ECF No. 27 at 6). The prison has a legitimate interest in the allocation of limited resources and running a simplified food service. *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). Since the policy of the CFM diet was designed to reduce costs and make a religious diet widely available, the implementation of the CFM diet is logically related to the prison's legitimate interest in the allocation of limited resources. Thus, the first *Turner* factor weighs in favor of the Defendants.

The second *Turner* factor—"whether there are alternative means of exercising the right that remain open to inmates"—weighs in Friedman's favor. *Turner*, 482 U.S. at 90. In his various filings, Friedman has made no indication that any other religious practice is burdened. Although Friedman may not have access to an appropriate religious diet, nothing currently in the record suggests Friedman cannot pray, read religious scripture, or engage in other religious practices. However, relevant to the inquiry here is the "distinction between a religious practice which is a positive expression of belief and a

religious commandment which the believer may not violate at peril of his soul." *Ward*, 1 F.3d at 878. Woven throughout Friedman's opposition is the understanding that the kosher diet is not a positive expression of belief but a biblical mandate to a practitioner of Orthodox Judaism. (ECF No. 38 at 9). Defendants make no attempt to address this distinction and claim the rabbinical authority certifying the kosher diet is enough to prove compliance with the mandates of Jewish dietary law. (ECF No. 27 at 6). This argument essentially ignores the main thrust of Friedman's assertions—the Rabbi's certification of the CFM diet is improper. (ECF No. 32 at 5). Friedman has every right to challenge the Rabbi's interpretation of Jewish Law as it applies to the CFM diet. *See Ward*, 1 F.3d at 878. Therefore, taking the evidence in the light most favorable to the non-moving party, the second *Turner* factor weighs in favor of Friedman.

In this case there is very little evidence concerning the third *Turner* factor—the impact of the accommodation on the guards and the inmates. *Turner*, 482 U.S. at 90. Defendants argue the inclusion of kosher meats and fish will increase costs, but they do not attach any supporting documents showing how the addition of kosher meats and fish would alter costs. (ECF No. 27 at 4). Friedman also does not address the impact of adding meats and fish in his opposition, but points to the BOP's CFM diet as evidence of an appropriate accommodation of the Jewish dietary program. (ECF No. 1 at 5). While the impact must be analyzed in relation to the specific needs of the NDOC, the existence of a prison system, with similar penological interests, implementing a different and more accommodating program leaves the court doubtful a similar program would negatively impact the guards and inmates of the NDOC. Additionally, ensuring vermin do not infest the food supply seems to provide more of a benefit than a detriment to the prison population. With the overall dearth of evidence showing the accommodation's burden on the prison population and guards, the court finds the record only slightly weighs in favor of Friedman as to the third *Turner* factor.

The final *Turner* factor—the existence or absence "of obvious, easy alternatives"—weighs in Friedman's favor. *Turner*, 482 U.S. at 90. The existence of easy alternatives "may be evidence that the [policy] is not reasonable but is an exaggerated response to prison concerns." *Id.* at 90-91. Evidence of easy alternatives was not specifically discussed in the parties briefing. However, similar to the third *Turner* factor, Friedman relies on the BOP's CFM menu as evidence of an appropriate religious prison diet. (ECF No. 38 at 14). The implementation of a different dietary program in a separate prison system is evidence of obvious and easy alternatives consistent with special considerations prisons require. Furthermore, nothing in the record suggests that storing food in sanitary conditions free from infestation is difficult. Therefore, the fourth *Turner* factor weighs in Friedman's favor.

As the discussion above illuminates, Defendants have failed to show that the record forecloses the possibility of a jury finding the NDOC's CFM is not reasonably related to the legitimate penological interest of saving costs. Therefore, summary judgment is not proper for Friedman's First Amendment claim.

**C.   RLUIPA**

RLUIPA provides in pertinent part: "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a)(1). RLUIPA defines religious exercise to include "any exercise of religion, whether or not compelled by or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). In its application of RLUIPA, the court must begin by "identifying the religious exercise allegedly impinged upon." *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008). Then, the court must decide whether there was substantial burden placed on that religious exercise. *Id.* If the court finds that a religious exercise was substantially burdened, the government must show that the burden imposed is "in

furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2); *see also Greene*, 513 F.3d at 986.

The religious exercise at issue in this case is access to a religious meal. (ECF 1 at 5). Because the court has already noted a triable issue of material fact as to whether a substantial burden is placed on religion under the First Amendment, the court need not re-assert the reasons for that decision here. Since a triable issue of material fact exists as to whether the CFM places a substantial burden on the practice of Orthodox Judaism under the First Amendment, a triable issue of material fact also exists under RLUIPA.

Moreover, RLUIPA requires the NDOC to prove the CFM is the least restrictive means of furthering a compelling governmental interest, *Greene*, 513 F.3d at 986; whereas, the First Amendment analysis requires the NDOC to prove the CFM is "reasonably related to a legitimate penological interests," *Turner*, 482 U.S. at 89. Indeed, RLUIPA's least restrictive means standard is more demanding than the First Amendment's reasonably related standard. Thus, for the same reasons that Defendants have failed to show the record has foreclosed the possibility of a reasonable jury concluding the CFM is not reasonably related to a legitimate penological interest, Defendants have also failed to meet the more demanding RLUIPA standard. Therefore, a triable issue of material fact exists as to Friedman's RLUIPA claim.

### D.  Qualified Immunity

Qualified immunity exists as a protection from civil liability to government officials when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires the court to consider two elements: (1) whether the facts alleged show a constitutional violation; and if so, (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier*

*v. Katz*, 533 U.S. 194, 201 (2001).

For over thirty years, well-established law has provided that inmates have a right to "food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Defense counsel effectively ignores this clearly established right and more than thirty years of related case law[8] in arguing that qualified immunity compels a decision in Defendants' favor. (ECF No. 27 at 10). Instead of following the Ninth Circuit's clear framework for analyzing qualified immunity in cases involving First Amendment challenges to religious diets,[9] Defense counsel argues, without a legal basis, that there is not a clearly established constitutional violation alleged in this case. (ECF No. 27 at 11).

Contrary to Defendants' position, Friedman has clearly alleged the CFM diet is kosher-deficient for several reasons and that the deficient diet has caused his health to suffer. (ECF No. 1 at 4-7). The unsupported assertion that the CFM diet is *per se* constitutional because it was "implemented under rabbinical supervision" falls flat. (ECF No. 11 at 4). While rabbinical approval of the CFM diet cuts against Friedman's claim that the lack of meat violates Jewish dietary law, Friedman's allegations also challenge the adequacy of the *preparation* methods employed. (ECF No. 1 at 4-5). Even the NDOC's regulation recognizes that kosher meals require preparation free from

---

[8] Ninth Circuit cases recognizing right to religious diet: *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993); *Ben-Avraham v. Moses*, 1 F.3d 1246 (Table), 1993 WL 269611 (9th Cir. 1993); *Ahelman v. Wawrzaszek*, 11 F.3d 674, 677 (9th Cir. 1997); *Dickinson v. Arizona Dept. of Corrections*, 189 F.3d 472 (Table), 1999 WL 493101 (9th Cir. 1999); *Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir. 2003); *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Vincent v. Stewart*, 757 Fed.Appx 578, 581 (9th Cir. 2018).

[9] Prison officials are entitled to qualified immunity in the context of religious meals if a reasonable prison official would not have understood that: (1) plaintiff's beliefs were religious in nature; (2) plaintiff sincerely believed that his religion required him to abide by the tenant at issue; and (3) refusal to provide accommodation for the tenets was not reasonably related to a legitimate penological interest. *Rawlings v. Stewart*, 10 Fed.Appx. 446, 447 (9th Cir. 2001); *see also Dickinson v. Arizona Dept. of Corrections*, 189 F.3d 472, *1 (9th Cir. 1999).

contamination to adhere to Jewish dietary requirements. (ECF No. 27-13 at 8-9). Because Friedman claims the CFM is not kosher and eating a non-kosher meal places his soul in peril, he has alleged a constitutional violation. *See McElyea*, 833 F.2d at 198. Therefore, the allegations by Friedman are enough to establish a violation of a clearly established constitutional right and qualified immunity is not available in this case.

## V. CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 27) be granted as to Defendant Snyder and denied as to all other Defendants. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant Ward be **DISMISSED** pursuant to Fed. R. Civ. P. 4(m);

**IT IS FURTHER RECOMMENDED** that the Defendants' motion for summary judgment (ECF No. 27) be **GRANTED** as to Defendant Snyder; and

**IT IS FURTHER RECOMMENDED** that the Defendants' motion for summary judgment (ECF No. 27) be **DENIED** as to all other Defendants.

DATED: October 22, 2020

_____
UNITED STATES MAGISTRATE JUDGE